# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EMCORE CORPORATION,** <br> **JDS UNIPHASE CORPORATION** <br><br> Plaintiffs, <br><br> **vs.** <br><br> **OPTIUM CORPORATION** <br><br> Defendant. | CIVIL ACTION NO. 2:06-cv-01202 <br><br> Judge Donetta W. Ambrose |

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>OPTIUM'S MOTION TO COMPEL</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................1

II.  ARGUMENT......................................................................................................................2

    A.   Plaintiffs Should Be Compelled to Produce All Documents Concerning the Subject Matter of the "Invention Disclosure" Document, As To Which They Intentionally Waived the Attorney-Client Privilege.......................................2

    B.   Plaintiffs Intentionally Waived Privilege With Respect to the "Interoffice Memorandum" By Introducing it at the Gertel Deposition and By Questioning Mr. Gertel Extensively About The Document; Plaintiffs Should Therefore Be Compelled to Produce all Documents Concerning the Subject Matter of the Interoffice Memorandum. ...............................................6

III. CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Fort James Corp v. Solo Cup Co.*, 412 F.3d 1340 (Fed. Cir. 2005) ...................................... 6, 10

*Genentech, Inc. v. USITC*, 122 F.3d 1409 (Fed. Cir. 1997) .......................................................... 9

*In Re Seagate*, 497 F.3d 1360 (2007) ....................................................................................... 6

*In Re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000) ................................ 5, 10

*Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382
  (W. D. Pa. 2005) ..................................................................................................................... 5

I.   **INTRODUCTION**

Plaintiffs JDS Uniphase Corporation ("JDSU") and EMCORE Corporation ("Emcore") (collectively, "Plaintiffs") have intentionally waived the attorney-client privilege with respect to two documents, one entitled "Invention Disclosure," and one entitled "Interoffice Memorandum." In light of such waivers, Defendant Optium Corporation ("Optium") moves to compel Plaintiffs to produce all documents, previously withheld as privileged, that concern the subject matters of these two documents.

The Court has already held that the first document, entitled "Invention Disclosure," was an attorney-client privileged document as to which Plaintiffs intentionally waived the privilege. Plaintiffs have used this document as a metaphorical sword in support of their invalidity estoppel theory in an attempt to show that Optium's CEO, Eitan Gertel, had some participation in the prosecution of the patents-in-suit when he worked at a predecessor to JDSU some ten years ago. Simultaneously, Plaintiffs have used privilege as a shield to withhold documents that concern the very same subject matter of the Invention Disclosure document that may favor Optium's position. Plaintiffs cannot have it both ways; they should be compelled to produce all documents concerning the subject matter of the "Invention Disclosure" document.

Plaintiffs similarly misuse the attorney-client privilege with respect to a document entitled "Interoffice Memorandum," by producing the document, using it at the Gertel deposition to try to support their estoppel theory, and simultaneously withholding other documents concerning the same subject matter as privileged. Plaintiffs now argue they did not waive privilege by claiming that the "Interoffice Memorandum" was not privileged in the first place. The document itself, however, as well as Gertel's testimony about it, shows indisputably that the document is a confidential communication between JDSU and its attorney for the purposes of

1

soliciting legal advice on patent validity, and consequently was clearly entitled to a claim of attorney-client privilege. Since they intentionally waived the privilege in order to use this document for their benefit, Plaintiffs should be compelled to produce all withheld documents relating to the same subject matter of the "Interoffice Memorandum," so as to preclude Plaintiffs' misuse of the privilege by shielding damaging documents on the same subject matter.

## II. ARGUMENT

### A. Plaintiffs Should Be Compelled to Produce All Documents Concerning the Subject Matter of the "Invention Disclosure" Document, As To Which They Intentionally Waived the Attorney-Client Privilege.

During the deposition of Eitan Gertel, Optium's CEO, on August 24, 2007, Plaintiffs disclosed for the first time a document entitled "Invention Disclosure" that they had previously withheld as privileged.[1] Plaintiffs also used the document to prepare several of their Rule 30(b)(6) witnesses and some of the witnesses' testimony was based on the document. (*See* Doc. No. 102, Memorandum of Law in Supp. of Optium's Motion for Sanctions, 5 - 8.) Upon motion by Optium, on September 25, 2007, this Court ruled that "Plaintiffs have intentionally waived their attorney-client privilege with respect to the 'Invention Disclosure' document." (Doc. No. 131, 09/25/2007 Order, 3-4.)

Plaintiffs apparently waived privilege concerning this document in order to use it as evidence in support of their contention that Optium should be estopped from asserting any claim of invalidity. (*See* Doc. No. 19, 11/22/2006 Affirmative Defense, ¶2.) In particular, Plaintiffs contend that Eitan Gertel was involved with the prosecution of the patents-in-suit, and this involvement should bar Optium from challenging the validity of those patents. (*See* Ex. 2, Pls.'

---

[1] The "Invention Disclosure" document is bates numbered PLF000312684 – PLF000312698, and was marked by Plaintiffs as Gertel Deposition Exhibit 13, and is attached hereto as Ex. 1.

First Interrog. Resp., at 12.) Plaintiffs waived the privilege in order to question Gertel at his deposition about what appears to be his signature on the last page of the document indicating that he had "reviewed" the document as a "Department Head" ten years ago, on May 6, 1997, when he worked for Uniphase Corporation.

On September 26, 2007, the day following the Court's order, Optium wrote to Plaintiffs requesting that they produce all previously withheld documents relating to the subject matter of the "Invention Disclosure" document. (*See* Ex. 3, 09/26/2007 Letter from Douglas Kline, Esq. to Robert Lindefjeld, Esq.) On October 17, three weeks later, Plaintiffs finally responded but refused to produce such documents. (*See* Ex. 4, 10/17/2007 Letter from Robert Lindefjeld, Esq. to Douglas Kline, Esq.)

A procedural issue, such as the attorney-client privilege, "that is not itself a substantive patent law issue is nonetheless governed by Federal Circuit law if the issue pertains to patent law . . ." *In Re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000); *see also Martin Marietta Materials, Inc. v. Bedford Reinforced Plastics, Inc.*, 227 F.R.D. 382, 391 (W. D. Pa. 2005) (courts have agreed that discovery disputes and procedural matters unique to patent law should be decided by Federal Circuit law). The matter before this Court here is whether Plaintiffs' intentional disclosure of the "Invention Disclosure" document also waived privilege in the subject matter of the document, and is thus a matter that pertains to patent law. *See In Re Spalding*, 308 F.3d at 804 (as an invention disclosure relates to an invention submitted for consideration for patent protection, the surrounding attorney-client privilege issues relating to the document implicates substantive patent law). Hence Federal Circuit law applies.

"The widely applied standard for determining the scope of a waiver . . . is that the waiver applies to all other communications relating to the same subject matter." *In Re Seagate*, 497

3

F.3d 1360, 1372 (2007) (quoting *Fort James Corp v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)).  "This broad scope is grounded in principles of fairness and serves to prevent a party from simultaneously using the privilege both as a sword and a shield; that is, it prevents the inequitable result of a party disclosing favorable communications while asserting the privilege as to less favorable ones."  *Id.*  In *Fort James*, the Federal Circuit held that because a party had waived privilege in a document reflecting an attorney communication relating to the "offer for sale" patentability bar,  in the interests of fairness, the waiver must also, "encompass[] not only communications involving commercial sales of the claimed invention, but also communications concerning the inventor's recognition and development of the invention."  *Id.* at 1350 – 51.

Plaintiffs' position is a classic attempt to abuse the attorney-client privilege by using the privilege both as a sword and a shield.  As made clear in the Gertel deposition, Plaintiffs intentionally waived the privilege in the "Invention Disclosure" document to attempt to support their invalidity estoppel theory.  (*See* Ex. 5, Gertel Dep. 196:2 – 198:24.)  It would be highly prejudicial to Optium should Plaintiffs be allowed to waive privilege in this document for their own benefit, yet at the same time assert privilege to withhold documents relating to the same subject matter that may be less favorable to Plaintiffs.  As in *Fort James,* Plaintiffs should be compelled to produce all documents relating to the subject matter of the "Invention Disclosure" document in the interest of fairness.

The "Invention Disclosure" document is a list of detailed questions, soliciting information about the invention and the invention process, and includes answers to those questions, provided by JDSU for the use of their patent attorneys.  Thus the subject matter of the document encompasses a wide variety of topics concerning the invention process and patent prosecution.  For example, the document asked the JDSU inventors to identify known prior art

4

and to distinguish their invention from previous methods and apparatus, and to state the advantages their invention provides.  (*See* Ex. 1, Invention Disclosure at 2, 3.)  The JDSU inventors, in a response spanning some eleven (11) pages, provided a detailed description attempting to distinguish their invention from the prior art.  (*See* Ex. 1, Invention Disclosure, at 3 – 13.)  Thus the "Invention Disclosure" document clearly includes information, provided by JDSU to their patent attorneys, distinguishing the claimed invention from the prior art and intended for use in the prosecution of the patent application before the U.S. Patent Office.  The document also includes information relating to the details of the conception of the alleged invention, among other subjects relating to the invention. (*See* Ex. 1, Invention Disclosure, at 13.)

Therefore, the waived subject matter of the "Invention Disclosure" document encompasses at least: i) the named inventors' research concerning the patents-in-suit including prior art to that research; ii) the investigation into patentability of the subject matter claimed in the patents-in-suit; iii) the preparation, filing and prosecution of the application for the patents-in-suit; and iv) the alleged differences between the subject matter claimed in the patents-in-suit and the prior art.  Plaintiffs should be compelled to produce all previously withheld documents relating to this subject matter.

Such documents include at least the documents logged on Plaintiffs' privilege log as numbers 39 – 42 (described as relating to "patentability determination"), 43 – 45 (described as relating to a "prospective patent"), 46 – 71 and 73 – 93 (described as relating to "patent prosecution"), and 342 – 371 (described as relating to "patent prosecution efforts" and/or is communication between JDSU and its patent prosecution attorneys, Allen Dyer, Boulder Patent

Services, and the Law Offices of Stephen Shear.)  (*See* Ex. 6, Plaintiffs' Privilege Log.) [2]  Such documents further include all documents logged on inventor Ronald T. Logan's privilege log, all of which are described as relating to "patent prosecution" and/or involve communication between Dr. Logan and JDSU's patent prosecuting attorneys Stephen Shear and Michael Pritzkau.  (*See* Ex. 8, Ronald T. Logan's Privilege Log.)  Such documents also include all withheld documents logged on the privilege logs of JDSU's patent prosecuting attorneys, Michael Pritzkau, Jay Beyer, Stephen Shear, The Pritzkau Patent Group, and the Law Offices of Stephen C. Shear, all of which relate to either patentability determination and/or the prosecution of the patents-in-suit.  (*See* Ex. 9, Michael Pritzkau's Privilege Log; Ex. 10, Jay Beyer's Privilege Log; Ex. 11, Stephen Shear's Privilege Log; Ex. 12, The Pritkau Patent Group Privilege Log; Ex. 13, The Law Offices of Stephen Privilege Log.)

> **B. Plaintiffs Intentionally Waived Privilege With Respect to the "Interoffice Memorandum" By Introducing it at the Gertel Deposition and By Questioning Mr. Gertel Extensively About The Document; Plaintiffs Should Therefore Be Compelled to Produce all Documents Concerning the Subject Matter of the Interoffice Memorandum.**

Plaintiffs' abuse of the attorney-client privilege is also evident with respect to a second document, entitled "Interoffice Memorandum," marked as Gertel Deposition Exhibit 12.[3]  Although this document, unlike the "Invention Disclosure" document, has not been the subject of a ruling by this Court, the applicable principles are the same.  Plaintiffs waived privilege by

---

[2] Plaintiffs' privilege log is riddled with vague descriptions and other deficiencies in violation of Rule 26.  Optium has written to Plaintiffs requesting that these deficiencies be corrected.  (*See* Ex. 7, 10/26/2007 Letter from Safraz Ishmael, Esq. to Cecilia Dickson, Esq.)  Plaintiffs have not yet responded to this letter.  Therefore, Optium's identification of item numbers to be produced are merely examples based on what can be deciphered at this time from Plaintiffs' vague descriptions.

[3] The "Interoffice Memorandum" is bates labeled Logan 0047-49 and is filed herewith as Ex. 14.

6

producing and using the document at Mr. Gertel's deposition. They must therefore produce all of the withheld documents that concern the same subject matter.

In this instance, Plaintiffs did produce the document as part of inventor Ronald T. Logan's document production. In the Gertel deposition, it quickly became obvious that the Interoffice Memorandum was a communication by one of the inventors, Ronald T. Logan, Jr., to a Uniphase attorney, S. Robinson, describing a prior art search that inventors Logan and Ruo Ding Li had performed to attempt to invalidate a British Telecom patent that was a threat to Uniphase at the time. (*See* Ex. 14, Interoffice Memo.) The attorney-client privilege applies to protect "the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. USITC*, 122 F.3d 1409, 1415 (Fed. Cir. 1997). The "Interoffice Memorandum" was clearly a confidential communication to a JDSU attorney (Robinson) from his client (JDSU), in which Logan (on behalf of JDSU) communicated his and his co-inventor's analysis of prior art to attorney Robinson to solicit Robinson's analysis and legal opinion on the validity of the British Telecom patent.

Plaintiffs' position, as disclosed in a September 9, 2007 "meet and confer" on the issue, appears to be that the document was never privileged because it was an opinion that was not confidential as it was prepared for the consumption of JDSU's customers.[4] To the contrary, however, Gertel testified that the document was a report by JDSU employees Logan and Li to attorney Robinson, intended to assist in creating a document for guiding customers on the

---

[4] Optium requested the production of all withheld documents relating to the subject matter of the "Interoffice Memorandum" document in an August 29, 2007 letter to Plaintiffs, and then again in a September 26 letter to Plaintiffs. (*See* Ex. 15, 08/29/2007 Letter from Douglas Kline, Esq. to Robert Lindefjeld, Esq.; Ex. 3, 09/26/2007 Letter from Douglas Kline Esq. to Robert Lindefjeld, Esq.) Plaintiffs refused to produce the documents claiming in a September 9, 2007 "meet and conference" that the "Interoffice Memorandum" was not entitled to privilege in the first place.

7

potential invalidity of the British Telecom patent. (*See* Ex. 5, Gertel Dep. 178:3 – 181:15.)  The document itself was not intended for public consumption; it was intended to solicit confidential legal advice on validity.  Whether JDSU later chose to share its legal opinions with its customers is irrelevant to the confidentiality of the communications soliciting such legal advice in the first place.

If there was any doubt about the purpose of the Interoffice Memorandum, or its attorney client privileged nature, Mr. Gertel's testimony dispelled those doubts, establishing beyond dispute that the document was a privileged communication by a client to its attorney.  Nevertheless, following Mr. Gertel's testimony to that effect, Plaintiffs' counsel continued to question Mr. Gertel about the memorandum and its subject matter in detail.  (*See* Ex. 5, Gertel Dep. 181:16 – 187:18.)  Thus, not only did Plaintiffs mark the "Interoffice Memorandum" document as an exhibit at Mr. Gertel's deposition, they then used it to extensively question Mr. Gertel on its subject matter with full knowledge that Dr. Logan prepared and sent the memorandum to a company attorney to solicit legal advice.  Accordingly, Plaintiffs waived the privilege in communications concerning the subject matter of the Interoffice Memorandum.  *See Genentech, Inc. v. U.S. Int'l Trade Comm'n,* 122 F.3d 1409, 1416 (Fed.Cir.1997) ("disclosure of confidential communications or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items."); *In Re Seagate*, 497 F.3d at 1372 ("The widely applied standard for determining the scope of a waiver . . . is that the waiver applies to all other communications relating to the same subject matter" (quoting *Fort James Corp v. Solo Cup Co.*, 412 F.3d 1340, 1349 (Fed. Cir. 2005)).[5]

---

[5] Plaintiffs have argued previously that because Gertel is a former JDSU employee he is still privy to the JDSU attorney-client privilege. Plaintiffs are wrong.  The attorney-client privilege of a corporation does not extend to former employees or agents.  Showing Gertel documents

8

Plaintiffs' intentional production and use of the Interoffice Memorandum at the Gertel deposition constitutes an intentional waiver of the privilege in the document and subject matter. Plaintiffs' strategy paralleled their strategy with respect to the Invention Disclosure document discussed above. Plaintiffs have waived the attorney-client privilege in the "Interoffice Memorandum" in order to advance their own contentions, while at the same time withholding on the grounds of privilege other documents concerning the subject matter that may be favorable to Optium. This is an abuse of the attorney-client privilege, and the Court should therefore compel Plaintiffs to produce all documents related to the subject matter of the "Interoffice Memorandum."

The subject matter of the document is a prior art invalidity search and analysis relating to the British Telecom patent. Plaintiffs should therefore be required to produce all previously withheld documents relating to: (i) invalidity analysis relating to the British Telecom patent; and (ii) prior art searches and prior art relating to the British Telecom patent. Such documents should include at least the documents listed as items 65 – 71 and 73 – 74 on Plaintiffs' privilege log, all of which are vaguely described as relating to "patent prosecution," are dated around the same time period, and are communications with attorney S. Robinson.[6] (*See* Ex. 6, Plaintiffs' Privilege Log.)

---

protected by JDSU's privilege and deposing him about JDSU privileged subject matter constitutes a waiver. *See Dexia Credit Local v. Rogan*, 231 F.R.D 268, 277, 279 (N. D. Ill. 2004) ("once documents are disclosed to the former agent or officer, that disclosure may force a waiver of the corporation's privilege as to all people.").

### III. CONCLUSION

For the reasons stated, Optium respectfully requests that the Court enter an order compelling Plaintiffs to produce all previously withheld documents related to the subject matter of the "Invention Disclosure" document and all previously withheld documents related to the subject matter of the "Interoffice Memorandum" document, and grant such further and other relief that it may deem just.

Respectfully submitted,

Dated: November 9, 2007

**OPTIUM CORPORATION**
By its attorneys,

By: /s Safraz W. Ishmael
Douglas J. Kline
(dkline@goodwinprocter.com)
Don M. Kennedy
(dkennedy@goodwinprocter.com)
Michael J. McNamara
(mmcnamara@goodwinprocter.com)
Safraz W. Ishmael
(sishmael@goodwinprocter.com)
**GOODWIN PROCTER LLP**
53 State Street - Exchange Place
Boston, MA 02109
Phone: (617) 570-1540
Facsimile: (617) 523-1231

Benjamin Hershkowitz
(bhershkowitz@goodwinprocter.com)
**GOODWIN PROCTER LLP**
599 Lexington Ave.
New York, NY 10022
Phone: (212) 813-8800
Facsimile: (212) 355-3333

James R. Kyper (PA I.D. No. 23099)
(jim.kyper@klgates.com)
Ashley L. O'Neill (PA I.D. No. 201428)
(ashley.oneill@klgates.com)

                            **KIRKPATRICK & LOCKHART**
                              **PRESTON GATES ELLIS LLP**
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, PA  15222
Phone:  (412) 355-6500
Facsimile:  (412) 355-6501

## **CERTIFICATE OF SERVICE**

     The undersigned hereby certifies that a true and correct copy of the attached MEMORANDUM OF LAW IN SUPPORT OF OPTIUM'S MOTION TO COMPEL was electronically filed on November 9, 2007 with the Court's Electronic Case Filing system, which will send electronic notification of such filing to the counsel of record.

                                    /s Safraz W. Ishmael
                                       Safraz W. Ishmael

LIBA/1839633.8